Filed 7/22/16  P. v. Long CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D068310 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCN331217) |
| DENNIS EUGENE LONG, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Michael J. Popkins, Judge.  Affirmed in part, modified in part with directions.

Patrick Dudley, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie, L. Garland, Assistant Attorney General, Arlene A. Sevidal and Michael Pulos, Deputy Attorneys General, for Plaintiff and Respondent.

INTRODUCTION

Dennis Eugene Long was charged with 69 criminal offenses for defrauding his friends, fellow church members, and acquaintances of tens of thousands of dollars through an herbal supplement investment scheme. Long pleaded guilty to five counts: one count of securities fraud with an admission it caused loss in excess of $500,000 (Corp. Code, § 25541; Pen. Code,[1] § 186.11, subd. (a)(2) [white collar crime enhancement]; count 1), three counts of grand theft of personal property, each involving more than $950 (§ 487, subd. (a); counts 4, 7, & 22), and one count of burglary of an inhabited dwelling (§§ 459, 460; count 10).

After hearing statements from a number of victims, the court decided it could not abide by the stipulated sentence of seven years and offered Long the opportunity to withdraw his guilty plea. Long chose not to do so and agreed the court could sentence him to a term between seven and 12 years. The court sentenced him to 12 years in state prison based upon the upper term of five years for securities fraud (count 1) with the five-year white collar crime enhancement plus three consecutive terms of eight months each for the grand theft counts (counts 4, 7, & 22). The court sentenced Long to the middle term of four years for first degree residential burglary (count 10) to be served concurrently with the other terms. In addition to other fines and fees, the court ordered victim restitution pursuant to section 1202.4, subdivision (f), totaling $422,167 for 19

---

[1] Further statutory references are to the Penal Code unless otherwise indicated.

victims. This included a restitution award of $50,000 for victims Frisco White and Marie Olsen.

Long contends on appeal (1) the court abused its discretion in sentencing him to 12 years in prison because it did not properly consider his age and health as mitigating factors, (2) the victim restitution award for White and Olsen was based on a clerical error and should be modified from $50,000 to a total of $25,000, and (3) the abstract of judgment should be corrected to strike the indication Long was convicted of a violent felony. Because the People concede contentions two and three, we remand for correction of the minutes and abstract of judgment to reflect a restitution award of $25,000 for victims White and Olsen and to strike the violent felony designation as to count 10. In all other respects, the judgment is affirmed because we conclude the court acted within its broad discretion for sentencing.

## BACKGROUND

### A[2]

Long created a limited liability company in 2005, which apparently never functioned as a business entity. Long and his wife attended a church and bible study group where they became trusted friends with a number of members. Long met with many of these church members privately in their homes where he offered to "bless" them with his good fortune. He told them he recently sold a company for $4 million in which he owned exclusive rights to an herbal supplement product line similar to Viagra. He

---

[2] Because the plea agreement was reached before a preliminary hearing, we draw the factual background from the victims' statements and the probation officer's reports.

told them he wanted to give them a "financial gift" by allowing them to buy shares in his company as original investors, which would provide extravagant guaranteed returns, with exponentially higher returns for higher investments. Long swore the church members to secrecy because he could not offer the investment opportunity to everyone. Long showed at least one investor a letter from an attorney purporting to substantiate the story of the $4 million sale. The letter turned out to be a forgery.

Church members and other acquaintances, including individuals Long met through his daughter's volleyball team, invested with Long between August 2005 and October 2012. He preyed on individuals who confided they were struggling financially or had financial concerns due to illness or family issues. Long provided various excuses for why the payout return was delayed including his own illness, bad negotiations, and an audit by the Internal Revenue Service (IRS).

When detectives executed a search warrant at Long's home, they located investment subscription agreements from the victims, but no evidence of a viable business or of Long producing or distributing an herbal supplement product. The victims' checks were deposited into the Longs' personal bank account and the money was used for their personal expenses such as private school for their daughter, luxury vehicles, extravagant vacations, jewelry, credit card payments and household expenses.

More than 30 victims lost over $900,000 to Long's scheme. When three individuals threatened to report Long to law enforcement, he returned a total of $9,500 to those individuals.

4

B

A felony complaint charged Long with 69 felony counts of criminal offenses conducted in a fraudulent scheme to obtain money from more than 30 named victims. The charges included one count of securities fraud (Corp. Code, § 25541), four counts of burglary of an inhabited dwelling (§§ 459, 460), 32 counts of making false statements in connection with the sale of a security (Corp. Code, §§ 25401, 25540), 31 counts of grand theft of personal property in excess of $950 (§ 487, subd. (a)), and one count of using the personal identifying information of another (§ 530.5, subd. (a)).

Long pleaded guilty to securities fraud (count 1), three counts of grand theft of personal property in excess of $950 (counts 4, 7, & 22), and one count of residential burglary (count 10). With respect to securities fraud, Long admitted he committed a fraud in excess of $500,000 involving the offer of corporate funds or securities. With respect to the grand theft counts, he admitted unlawfully stealing money from others on three separate occasions in excess of $950 each. With respect to the residential burglary count, he admitted entering a residential dwelling with the intent to commit a fraud or felony. He entered the plea in exchange for a stipulated sentence of seven years in state prison and dismissal of the remaining charges. The plea agreement included a waiver pursuant to *People v. Harvey* (1979) 25 Cal.3d 754, 758, which permitted the court to consider facts underlying dismissed counts for purposes of sentencing.

C

At the sentencing hearing, the court heard statements from numerous victims who described how Long preyed on their vulnerabilities. They expressed how his actions

5

caused them to lose not only money, which impacted their lives significantly, but also their ability to trust others. Some described Long as "a wolf in sheep's clothing." Many victims expressed their desire for the court to give him the maximum possible sentence and their concern that seven years was not an adequate sentence for his conduct, particularly since he would likely only actually serve three and a half years. Other victim statements in the probation report expressed concerns that a seven-year sentence was too light and would be "just a 'slap on the wrist' " or a "joke"

After hearing from the victims, the court stated, "I am moved by everyone's comments. And it's always been my feeling that when one steals, it's wrong no matter who you steal from. [¶] But this court feels that it's even more egregious when you steal from people who have been nice to you, taken you in as a friend. And it becomes much more serious, in my opinion, when that occurs. And that's the case here. [¶] Apparently everyone was kind to Mr. Long. Everyone took him in as a friend. Everyone trusted him. And the payback for that is that they lost an enormous amount of money."

Noting Long pleaded guilty to some of the charges for a stipulated sentence of seven years, the court acknowledged Long could receive 50 percent credit for good behavior, in which case he would serve only three and a half years. The court concluded by saying, "the comments that I've heard, the amounts of money that have been taken, and the nature of the thefts from people who were kind to him, people who trusted him, has caused this court a great deal of concern. [¶] Even though it's a stipulated sentence of seven years, this court has the power at the time of sentencing not to follow that sentence." The court stated it was appalled by what occurred in this case and agreed

seven years was not appropriate.  The court stated its intention to sentence Long to 12 years in prison, but would allow Long to withdraw the plea if he so desired.  The court granted Long a continuance to consider his options.

D

Long chose not to withdraw his plea and agreed the court could sentence him to a term between seven and 12 years.  The court granted another continuance to allow the probation department to prepare a supplemental report including a statement from Long and to allow Long's attorney the opportunity to submit briefing in support of a sentence less than 12 years.

In his statement to the probation department, Long said he consulted with attorneys to set up his company.  He said he started by selling units of the company to friends and acquaintances, but then decided to sell the product outright.  He stated he paid himself a salary of $225,000 per year for four or five years.  He said he was audited by the IRS and then stopped collecting money because he was ill.  He admitted lying to six families so he could "buy some time" until he could sell the company.  He claimed he thought he and all of his investors would do well, but he mishandled things and "screwed up."

Long submitted medical records showing he had a history of chronic lymphocytic leukemia (CLL), which was stage I and did not meet the criteria for treatment.  He had an episode of acute liver failure in 2012, possibly caused by an autoimmune disease.  He was treated with medications and followed by physicians on an outpatient basis.  While

7

in custody, Long had a six-millimeter (mm) basal cell carcinoma lesion on his left upper back biopsied. He also had a staphylococcus infection on his left big toe.

E

The court considered briefing and arguments from both sides, the supplemental and original probation reports, victim impact statements, and letters of support for Long. The court noted Long was 65 years old at the time of sentencing and had no prior record. The court also noted he had some medical issues. The court considered the fact Long served in the military as a positive factor, even though there was some dispute about his length of service. The court also considered the fact Long entered a plea at an early stage of the proceeding and chose not to withdraw his plea when the court indicated its intention not to abide by the stipulated sentence.

The court acknowledged Long's statement to the probation officer reflected some remorse. However, his statement also minimized his conduct and tried to portray this as a bad investment and a bad judgment rather than theft from his friends. The court stated, "He's trying to manipulate us again into believing this was a righteous investment and he simply was paying himself a salary and he just made poor decisions and poor judgment. And I just don't buy it."

The court agreed with the probation report's characterization of Long's actions as "egregious, selfish and manipulative." The court stated it was moved by the victims' statements stating, "[p]eople have lost life savings believing that their investments were going to be used for a legitimate purpose for marketing a product that they were told was

8

going to have a great return and not to pay an exorbitant salary to the defendant of $225,000 a year for four or five years."

The court noted the probation department's recommendation of a 14-year prison term was not outrageous, but indicated Long deserved some credit for abiding by the guilty plea. The court determined an aggregate 12-year prison term was appropriate.

The court imposed the upper term of five years for securities fraud, finding the aggravating factors outweighed any mitigating factors. As to the white collar crime enhancement under section 186.11, subdivision (a)(2), the court found a consecutive upper term of five years appropriate because aggravating factors outweighed any mitigating factors, "particularly the fact that the amount stolen actually exceeded the $500,000 by at least $500,000 over and above that." As to the grand theft counts, the court noted they involved separate incidents and separate victims. The court imposed three consecutive eight-month terms (one-third the middle base term) for a total of two additional years. The court imposed the middle term of four years for the residential burglary count, but concluded Long's early acknowledgment of guilt and his decision not to withdraw his guilty plea were mitigating factors justifying a concurrent term.

DISCUSSION

I

Long contends the trial court abused its discretion by failing to give sufficient weight to his age and health conditions as mitigating factors in deciding the length of his sentence. We disagree.

9

"When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the choice of the appropriate term shall rest within the sound discretion of the court." (§ 1170, subd. (b).) "California law affords the trial court broad discretion to consider relevant evidence at sentencing." (*People v. Towne* (2008) 44 Cal.4th 63, 85.) We review a sentencing decision for abuse of discretion. "The trial court's sentencing discretion must be exercised in a manner that is not arbitrary and capricious, that is consistent with the letter and spirit of the law, and that is based upon an 'individualized consideration of the offense, the offender, and the public interest.' " (*People v. Sandoval* (2007) 41 Cal.4th 825, 847.)

"In reviewing for abuse of discretion, we are guided by two fundamental precepts. First, ' "[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." ' [Citations.] Second, a ' "decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.' " ' [Citations.] Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony* (2004) 33 Cal.4th 367, 376-377.)

The court in this case considered Long's age and the fact he had no prior criminal record as a positive mitigating factor. The court also considered his medical conditions

10

stating it had "no doubt Mr. Long does have these medical issues." The court stated "the amount of weight that should be given for sentencing … is questionable to the court, but nevertheless, I do believe he has those medical issues."

We do not understand this statement to be a question either about the ability of the court to consider medical issues[3] or about whether Long actually had some health issues. Rather, we assume the court meant what it said. It had reservations about how much weight Long's medical issues deserved when balanced against the aggravating circumstances present in the case such as the serious nature of the crimes involving large amounts of money stolen from numerous victims, many of whom were friends who trusted and confided in Long about their financial concerns and vulnerabilities.[4]

The probation report listed possible circumstances in aggravation to include the planning, sophistication and professionalism in carrying out the crime (Cal. Rules of Court, rule 4.421(a)(8))[5] the fact Long took advantage of a position of trust or confidence with friends, church members and parents of his daughter's friends (rule 4.421(a)(11), and the fact the offenses occurred over several years giving Long many opportunities to stop his criminal behavior, "including when he became ill; however, he chose to continue his

---

[3]  Rule 4.423(b)(2) of the California Rules of Courts allows the court to consider as a mitigating factor whether the "defendant was suffering from a mental or physical condition that significantly reduced culpability for the crime." Because the court considered Long's medical conditions, we need not reach the issue of whether or not his conditions were such that they "significantly reduced culpability for the crime."

[4]  According to the medical records submitted, Long's conditions appeared stable with medications and medical care.

[5]  Further rule references are to the California Rules of Court.

11

criminal acts after he recovered from his illnesses" (rule 4.408(a)). The court found these aggravating circumstances "far outweigh any mitigants." The court's decision in this regard and its sentencing choice was neither irrational nor arbitrary. "It is not our role to interfere with such a determination. No abuse of discretion has been demonstrated." (*People v. Lai* (2006) 138 Cal.App.4th 1227, 1259.)

## II

" '[D]irect victims of crime have a statutory right to restitution on the full amount of their losses.' " (*People v. Millard* (2009) 175 Cal.App.4th 7, 26.) "[A] prima facie case for restitution is made by the People based in part on a victim's testimony on, or other claim or statement of, the amount of his or her economic loss. [Citations.] 'Once [the People have] made a prima facie showing of [the victim's] loss, the burden shifts to the defendant to demonstrate that the amount of the loss is other than that claimed by the victim.' " (*Ibid.*) We review a restitution order for abuse of discretion. (*Ibid.*)

Long contends, and the People concede, the $50,000 restitution award for victims White and Olsen was based on a clerical error from the probation department's stipulated sentence report. The losses identified for White and Olsen were $15,000 and $10,000, for a total of $25,000. Therefore, we modify the restitution award to White and Olsen from $50,000 to $25,000 and direct the trial court to correct the court minutes and the abstract of judgment accordingly.

## III

"[A]ny burglary of the first degree" is a "serious" felony. (§ 1192.7, subd. (c)(18)); however, for a felony to be violent, it must be "charged and proved that another

12

person, other than an accomplice, was present in the residence during the commission of the burglary."  (§ 667.5, subd. (c)(21).)  Count 10 alleged Long committed unlawful entry into a building "occupied" by the victims with the intent to commit theft.  Long admitted in making his plea he "entered a residential dwelling with the intent to commit a fraud/felony."[6]  However, as the People concede, Long did not specifically admit the individuals were present at the time of the burglary.  Since count 10 was not pleaded and proven to be a violent felony, we direct the court to correct the abstract of judgment to remove such a designation.  (*People v. Mitchell* (2001) 26 Cal.4th 181, 188.)

---

[6]    Long acknowledged during the plea colloquy count 10 would be considered a strike because it was a "serious *or* violent felony."  (Italics added.)

13

DISPOSITION

The victim restitution award to White and Olsen is modified from $50,000 to $25,000 and the trial court is directed to correct the court minutes and the abstract of judgment accordingly. Additionally, the trial court is directed to amend the abstract of judgment to remove the designation of count 10 as a violent felony. The court is further directed to forward a copy of the amended abstract to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

_____

McCONNELL, P. J.

WE CONCUR:


_____

NARES, J.


_____

O'ROURKE, J.